MARTHEY UNDERWOOD, Appellant, v. MODERN WOODMEN OF AMERICA, Appellee.

**Mutual insurance:** STIPULATION: ESTOPPEL. Where by the terms of a stipulation in a suit on a benefit certificate involving the question of a claimed delinquent assessment, there was repeated reference to the assessment as having been made for the month of October, and it was conceded that if the method provided for giving notice of assessments was valid the defense based on nonpayment was complete, the plaintiff was estopped to deny that the assessment was due for the month specified.

**Same:** NOTICE OF ASSESSMENTS: SUFFICIENCY. The agreement between a mutual assessment association and its members that notice of assessments shall be given by means of a printed publication, addressed and mailed in due time to each member, is not so unreasonable as to render it void; and conceding that a further provision making the affidavit of the publisher conclusive evidence of the mailing and receipt of the notice to be unreasonable, still such proof under the agreement would be a sufficient *prima facie* showing of notice, unless overcome by other evidence offered by plaintiff.

*Appeal from Scott District Court.*—HON. D. V. JACKSON, Judge.

TUESDAY. FEBRUARY 16, 1909.

ACTION upon a benefit certificate issued on the life of Rollin Underwood. Trial to the court upon an agreed statement of facts. Judgment for defendant. and plaintiff appeals.—*Affirmed.*

*W. M. Chamberlain* and *Walter H. Peterson,* for appellant.

*Truman Plantz* and *Salinger, Scott & Theophilus,* for appellee.

WEAVER, J.—The statement of facts so far as the same is material on this appeal may be condensed as follows: In June, 1902, Rollin Underwood, son of plaintiff, became a member of the defendant society which issued to him a benefit certificate, undertaking at his death and upon the performance of certain conditions to pay to the plaintiff the sum of $2,000. As a part of the consideration for said benefit, he undertook to pay all dues and assessments regularly levied within the time limit provided by the laws and rules of said society. The society was not of a merely local character, but was extended in the form of local branches or lodges over many states, and had a membership of about 650,000 persons. Assessments were made from time to time by a board of directors, notice thereof being printed in a monthly publication called The Modern Woodmen, issued by the society; one copy being mailed to each member in good standing. By a by-law of the society which was in force when Rollin Underwood became a member, this method of notification was provided for, and failure upon part of any member to pay such assessment on or before the 1st day of the month following the date of said notice, or upon failure to pay the quarterly dues to the local camp at or

before their maturity, was made to operate of itself as a suspension from membership, and during such suspension his benefit certificate was to be "absolutely null and void." Rollin Underwood died November 20, 1902, and due notice and proofs of his death were furnished to the defendant, which refused to recognize any liability upon said benefit certificate because of the nonpayment by said deceased of an assessment levied for the month of October, 1902.

As the question here raised concerning the alleged delinquency of the deceased in the payment of said assessment is the one upon which the entire controversy is made to turn, we here quote the stipulation of the parties in respect thereto:

1. MUTUAL INSURANCE: stipulation: estoppel.

(9) It is stipulated between the parties to this action that the matters set out in said answer of Modern Woodmen of America, claimed to be a part of the application made by said Rollin Underwood, were contained in and were a part of said application. It is also stipulated and agreed that a regular and legal assessment by the board of directors of said Modern Woodmen of America for the month of October, 1902, was properly levied and called for the benefit of said Modern Woodmen of America, and that said Rollin Underwood was liable for the payment of said assessment to said Modern Woodmen of America, if legally notified of the same, and that said Rollin Underwood did not pay said assessment, and that the same was not paid by anyone. . . .

(12) It is stipulated and agreed between the plaintiff and the defendant that the only evidence in existence on the question as to whether said Rollin Underwood received the notice of the assessment for October, 1902, is the affidavit of the publisher of said official paper attached to a copy thereof, together with a copy of the mailing list, and that the name of said Rollin Underwood appeared on said list, and that the only matter in dispute in the case is the reasonableness or legality of said sections 47, 48 and 49 of the by-laws.

(13) It is admitted by the plaintiff and the defendant

that in section 47 of the revision of 1901 of the by-laws of said defendant, as herein set out, is a legal by-law and conclusive upon the said Rollin Underwood and his beneficiary, Marthey Underwood, the plaintiff herein, that this action can not be maintained by the plaintiff, and that judgment should be entered in favor of the defendant and against the plaintiff for costs.

The section of the bylaws referred to in the last preceding paragraph is in the following words:

Sec. 47.   Mailing Copy of Paper Shall be Notice to Members of Assessments.—Affidavit of Publisher Conclusive Evidence.—The mailing on or before the last day of the month preceding the call for any assessment, or of the issue of the monthly official paper containing notice of any assessment, shall be sufficient service of such notice on each beneficial member of such assessment.   The affidavit of the publisher of said official paper, attached to a copy thereof, together with a copy of the mailing list, shall be conclusive evidence of all facts therein stated relative to the publication, mailing, time of publication, and mailing of a copy of said paper to each beneficial member named in said list, and it shall be held, upon such proof, that each beneficial member to whom a copy of said paper has been so mailed, as shown by said affidavit has received notice of said assessment in due time.

In argument counsel for the appellant calls attention to the fact that nowhere in the stipulation of facts is there any express statement of the precise date of the assessment in question, and argues that we can not presume that it had become delinquent in the lifetime of the insured; but, conceding the omission so suggested, we think the appellant is clearly estopped by the stipulation from reaping any advantage therefrom.   The stipulation repeatedly speaks of the assessment as having been made "for the month of October," and we think this language is to be fairly construed as referring to an assessment payable during the month named.   Moreover, it is agreed

by the thirteenth paragraph of said stipulation that if section 47 of the by-laws is a legal by-law, and conclusive upon the member and the beneficiary, then "this action can not be maintained by the plaintiff, and judgment should be entered in favor of defendant for costs." This in effect is a concession that, if the method of giving notice provided for in section 47 of the by-laws is legal and valid, then the defense based on the nonpayment of the assessment for October is complete, and under such stipulation we must confine our attention to the legal sufficiency of the by-law to which reference is made.

It is further contended by the appellant that the provision made by section 47 of the by-laws for giving notice to members of assessments made is unreasonable and void. We are not prepared to so hold.

2. SAME: notice of assessments: sufficiency. So long as the system of frequent assessments for small sums is allowed, it is manifestly impracticable without very burdensome expense for the directors of a society composed of hundreds of thousands of members scattered over the length and breadth of the land to send to each a notice by registered letter or other direct method of personal communication, and we see no good reason why a provision for general notice by means of a printed publication mailed in due time to the address of each member may not be agreed to by the member as a part of the contract between him and the society. Counsel's chief objection to this by-law seems to be in the provision giving conclusive effect to the affidavit of the publisher attached to the mailing lists of the paper containing the notice. We may concede for the purposes of this case, though we do not now decide, that, so far as it seeks to make the affidavit conclusive evidence of the mailing and receipt of the notice, it is unreasonable, and to uphold it to that extent would put it within the power of a single officer or employee of the society by a false or mistaken affidavit to invalidate the

benefit certificate of every member without recourse or
remedy for those injured by his negligence or wrong.
But there is no apparent unreasonableness in treating such
proof under the agreement of the parties as at least a
sufficient *prima facie* showing that the directorate has done
its duty, and that notice has been duly given of the assess-
ment to the membership. Giving it this effect, the plaintiff
must fail in her appeal, for by the twelfth paragraph of
the stipulation it is conceded that there is no other evi-
dence upon the question whether Rollin Underwood re-
ceived the notice than such as is offered by the mailing
lists of the publication containing said notice and the
affidavit of the publisher thereto attached. To say the very
least, we think the burden was upon the plaintiff to over-
come the *prima facie* sufficiency of the evidence to the
use of which Rollin Underwood had agreed by his con-
tract of membership. This was not done, and there was
no error in rendering judgment in the defendant's favor.

  We do not undertake any review of the authorities
cited by counsel on either side. An examination of them
discloses nothing out of harmony with the conclusion
above announced which is grounded upon elementary
principles of the law of contracts. The judgment of the
district court is *affirmed.*